275 So.2d 364

**Alene COLLIER**

v.

**STATE.**

8 Div. 275.

Court of Criminal Appeals of Alabama.

March 27, 1973.

Sherman B. Powell, Sr., Decatur, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

GOODWYN, Circuit Judge.

The appellant, Alene Collier, prosecutes this appeal from a judgment of the Circuit Court of Morgan County, Alabama, adjudging her guilty of manslaughter in the first degree and sentencing her to imprisonment in the penitentiary for a term of one year and one day. This judgment and sentence were in accord with the jury verdict rendered after trial upon her plea of not guilty to an indictment charging murder in the second degree of "Leon Mitchell by shooting him with a rifle."

The evidence for the State was to the effect that Mitchell came to the Collier home on the night in question in an intoxicated condition and threatened the defendant with a knife. He chased her from the house on three separate occasions that night. The second time she left the house she picked up a .22 caliber rifle near the front door and laid it underneath the house. Upon returning to the east room of the house, she noticed that Mitchell had cut the straps from one of her purses which was lying on a table. She questioned him about this, whereupon he cursed her and threatened to kill her. She left the house for the third time, and upon procuring the rifle from underneath the house, she walked to the rear of the house at the outside window of the east room and fired one shot through the window at Mitchell, who was standing in the room facing the table on which the mutilated purse was lying. The bullet struck him underneath the left armpit in the center of his body, causing death.

Blood and a knife were found on a half-bed in this room by investigating officers; together with a small protrusion or hole in the screen of the window, the edges of which hole pointed inward. No rifle slug was found in the room nor was any spent cartridge found inside or outside the house.

Evidence on behalf of the defendant was to the effect that Mitchell was the father of the defendant's two small children, but she and Mitchell had never been married to one another in a civil ceremony. Mitchell had cut her with his knife on two or three occasions prior to the night of the shooting. He had never helped to support the two minor children and he would stay at the Collier home on occasions when he

was drunk. The defendant lived in the home of her mother.

The defendant testified in her own behalf that she saw Mitchell coming to the home of her mother on the night in question and that he held an open knife in his hand. He informed her that he had lost $30.00 gambling and would kill her if she did not give him some money. She borrowed $5.00 which she gave to him and informed him that she could get no more. Mitchell then ran her from the house, cutting at her with the knife. She remained in the yard while he told her that if she came back into the house he would kill her. When she thought it safe to do so, she reentered the house; but he again chased her out. When Mitchell started beating on her child, she again entered the house and saw him chase her mother from the house with the knife. When he chased the Defendant from the house again she got a bullet for the rifle out of the chiffarobe drawer, and then went across the street to the home of her grandfather and obtained the rifle, which she placed underneath the Collier home. She went into the house again and asked Mitchell why had he cut her purses. He still held the knife in his hand and he cursed and threatened her again. She left the house, obtained the rifle from where she had laid it underneath the house and went to the outside of a window of the house. Mitchell was standing in the house at this time. They conversed through the window with one another and his exact words were, "If you come in the house, I'll kill you." As he said this he shook the open knife at her. While standing outside the house she then jerked up the rifle and fired at him through the window. The glass was missing from the two bottom panes of the window but it was covered by a wire screen. After the shot was fired Mitchell said, "You got me now." He closed the knife and sat on the bed.

At first she did not know whether he was shot or was playing. After waiting a few minutes she went into the room where he lay and saw the blood on his shirt. She bathed his face and head with a wet towel and accompanied him in the ambulance to the hospital. He never spoke again, but only made grunting noises.

■ The elements of self-defense, justifying the accused in taking the life of his assailant are; (1) that the Defendant must be free from fault in bringing on the difficulty; (2) there must be a present impending peril to life, or danger of great bodily harm, either real or so apparent as to impress on the mind of a reasonable person a reasonable belief of an existing necessity to take life; (3) there must be no reasonable mode of escape from the threatened injury without increasing the danger. Rice v. State, 20 Ala.App. 102, 101 So. 82. But a person is under no duty to retreat from his own dwelling or the curtilage thereof. Madry v. State, 201 Ala. 512, 78 So. 866; Walker v. State, 205 Ala. 197, 87 So. 833.

■ It is also the law that the right of an accused to defend another person as coextensive with the right of the other person to defend himself, and the accused who defends another is upon no higher plane than the one defended. Cain v. State, 17 Ala.App. 530, 86 So. 166. In other words, the one invoking self-defense in protection of a third person is placed in the shoes of such third person. Griffin v. State, 229 Ala. 482, 158 So. 316.

■ Whether the killing of another was justified as an act of self-defense is a question for the jury. Turner v. State, 160 Ala. 40, 49 So. 828; and this is true even though the defendant's testimony as to how the difficulty occurred is uncontradicted. Olive v. State, 8 Ala.App. 178, 63 So. 36.

■ A defendant relying on self-defense is not under a burden of proving such issue to the reasonable satisfaction of the jury; but only of offering such evidence as will, when considered with the entire evidence in the case, generate in the jury's mind a reasonable doubt of his guilt. Ex parte Williams, 213 Ala. 121, 104 So.

282; Hubbert v. State, 32 Ala.App. 477, 27 So.2d 228. If the defendant shows a present impending peril to life or of grievous bodily harm, real or apparent, without a reasonable mode of escape or that he was excused from retreating; the burden is then on the State to show that the defendant was at fault in bringing on the difficulty. Roberson v. State, 183 Ala. 43, 62 So. 837; Lakey v. State, 20 Ala.App. 78, 101 So. 537; Cert. Den., Ex parte Lakey, 211 Ala. 615, 101 So. 541.

The trial judge clearly set forth the applicable rules of law as to self-defense in his oral charge to the jury; and this issue was resolved against the defendant by the jury. There was no error in overruling the motion for a new trial on the ground urged by the defendant that the verdict is not sustained by the great preponderance of the evidence, or is contrary to law.

There was ample evidence in the record from which the jury could have found that at the moment the defendant fired the fatal shot neither the defendant nor any third person was in a present impending peril, either real or apparent, of losing life or suffering great bodily harm at the hands of the person slain, notwithstanding the conduct of the deceased may have been very provocative or indicative of future peril.

■ To justify taking life in self-defense, the danger to the defendant of death or great bodily harm, either real or apparent, must be imminent. Wright v. State, 22 Ala.App. 376, 115 So. 852; Tittle v. State, 15 Ala.App. 306, 73 So. 142.

The conduct of the deceased at the time of the shooting and immediately prior thereto probably accounts for the jury's finding that the defendant was not guilty of malice in the slaying, and for the imposition of a minimum penitentiary sentence for manslaughter in the first degree.

Written charges 3, 4, 7, and 11 requested by the defendant, relating to murder in the second degree were covered in the Court's oral charge and written charges given at the request of the defendant, and were properly refused. McMickens v. State, 18 Ala.App. 36, 88 So. 342. Moreover the defendant was acquitted of the charge of murder in the second degree.

■ Written requested charges 5 and 17 are argumentative and omit the element of self-defense that there be a present impending peril to life or danger of great bodily harm, either real or apparent, and therefore were properly refused. Campbell v. State, 133 Ala. 81, 31 So. 802, 91 Am. St.Rep. 17; Rice v. State, Supra; Sanford v. State, 2 Ala.App. 81, 57 So. 134.

Charge 6 likewise is argumentative and incorrectly states the elements of self-defense in a homicide case. McBryde v. State, 156 Ala. 44, 47 So. 302; Sanford v. State, *Supra*.

Charge 15 was to the effect that under the evidence in the case the defendant was at her home, and she was under no duty to retreat from her home. Charge 16 was to the effect that a person assailed in his own home is never required to leave his home to escape such danger.

■ Both of these charges are incorrect and were properly refused. The law in a homicide case is that the defendant is not unconditionally excused from the duty of retreat in his own home. He is not obliged to retreat if he is free from fault in bringing on the difficulty and if he is in imminent peril of death or great bodily harm, real or apparent, at the hands of the assailant.

■ The right to stand his ground in his home and if necessary to kill his adversary, without being under an obligation to retreat from his home, exists only when there is freedom from fault in bringing on the difficulty and an impending peril to life or limb. Maxwell v. State, 129 Ala. 48, 29 So. 981; Sanford v. State, Supra.

Charge 18 was properly refused as argumentative. Campbell v. State, Supra; Sanford v. State, Supra.

Charges 13, 19 and 20 were properly refused as misleading and argumentative. Sanford v. State, Supra.

■ Charge 14, which is hypothesized on the shooting being accidental, was properly refused as there was no evidence whatever, or any inference from the evidence, that the shooting was accidental. Lewis v. State, 96 Ala. 6, 11 So. 259, 38 Am.St.Rep. 75. Moreover, the charge does not correctly state the elements of self-defense. Bell v. State, 115 Ala. 25, 22 So. 526; Rice v. State, Supra. It was also properly refused on the ground that an accidental killing can sustain a conviction of manslaughter in the second degree. Smith v. State, 165 Ala. 50, 51 So. 610; Jones v. State, 21 Ala.App. 234, 109 So. 189.

There being no error in the record the judgment is hereby affirmed.

The foregoing opinion was prepared by Honorable GARDNER F. GOODWYN Jr., Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

Affirmed.

All the Judges concur.